UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-62200-CIV-COHN-SELTZER

LOUIS RAFAEL HURTADO,

    Plaintiff,

v.

BALERNO INTERNATIONAL LTD., a British
Virgin Islands company,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT

**THIS CAUSE** is before the Court on Defendant's Motion to Set Aside Default Judgment Pursuant to Fed. R. Civ. P. 60(b). DE 47 ("Motion" or "Motion to Set Aside Default Judgment"). The Court has considered the Motion, Plaintiff's Response [DE 54], Defendant's Reply [DE 59], and the record in this case, and is otherwise advised in the premises. The Court notes that neither party has requested an evidentiary hearing on Defendant's Motion.

### I. Background

### A. Factual Background

Plaintiff Louis Rafael Hurtado was a chef aboard the M/Y PICNIC, a 100-foot custom motor yacht. DE 1 ¶ 1. He joined the PICNIC's crew in March 2017, after receiving a call from the PICNIC's captain, Pablo Gonzalez Parodi. Id. ¶ 10; DE 42-1 ¶ 6; DE 54-2 at 1 ¶ 4. The PICNIC embarked on a month-long charter during March

and April 2017.  DE 1 ¶ 11.  The voyage was to begin in Puerto Rico and include two trips to Cuba, with an intervening stop in south Florida.[1]  DE 42-1 ¶ 6; DE 54-2 at 1 ¶ 5.

Plaintiff was not required to undergo a pre-hiring medical examination or medical interview.  Id. at 1 ¶ 6.  Upon coming aboard the PICNIC in Puerto Rico, however, Plaintiff was asked to present a MCA Seafarer's Medical Certificate.  DE 42-1 ¶¶ 7-8; DE 54-2 at 2 ¶ 7.  Plaintiff informed Captain Gonzalez and a flag-state surveyor that the certificate was at his home in Fort Lauderdale, Florida.  DE 42-1 ¶ 8; DE 54-2 at 2 ¶ 7.  Plaintiff was nonetheless permitted to remain onboard the PICNIC.  Id. at 2 ¶ 8.  Captain Gonzalez asserts that he told Plaintiff to retrieve the medical certificate when the PICNIC stopped in south Florida between trips to Cuba.  DE 42-1 ¶ 9.

In mid-April 2017, not long after going off charter, the PICNIC was joined by its beneficial owner in Cuba.  DE 1 ¶ 12.  While in Cuba with the owner onboard, Plaintiff and the crew of the PICNIC endured a grueling work schedule in order to meet the owner's demands for high-quality service.  Id. ¶ 13.  After around ten days of intense work, Plaintiff fell ill and sought out medical attention.  Id. ¶ 14.  Plaintiff was informed that he had a serious hernia condition and required immediate surgery.  Id. ¶ 15.  Plaintiff then traveled by taxi from Varadero, Cuba to a hospital in Havana that had the ability to perform Plaintiff's operation.  Id. ¶ 16.

At the hospital, Plaintiff attempted to have the PICNIC's agent or insurance authorize payment for the surgery, but was unable to do so.  Id. ¶ 17; DE 28-6 at 2-3.  Plaintiff's financial difficulties were further complicated by the fact that credit cards and U.S. dollars cannot be used in Cuba.  DE 1 ¶ 18.  In order to avoid ejection from the

---

[1] The record is not clear where in south Florida the intervening stop was to occur.  Captain Gonzalez states that the stop was to be in Key West [DE 42-1 ¶ 6], while Plaintiff states that it was to be in Fort Lauderdale [DE 54-2 at 1 ¶ 5].

Havana hospital, Plaintiff borrowed money from a friend, who had the funds sent from the U.S. to Cuba by Western Union. Id. ¶¶ 18-19. Plaintiff underwent the surgery on April 28, 2017. DE 21-1 at 3 ¶¶ 6-7, 10, 11. Afterwards, he spent a required period of recovery in Cuba, and then returned to Florida, where he spent additional time convalescing. DE 1 ¶ 21.

With the exception of a single $1,000 payment [see DE 42-1 ¶ 17], the PICNIC, through Captain Gonzalez, did not pay for the costs of Plaintiff's medical procedure or his repatriation to the U.S. from Havana [DE 1 ¶¶ 22-23]. At some point, Plaintiff asked Captain Gonzalez if he could return home to Fort Lauderdale, Florida on the PICNIC, but was told he could not. DE 54-2 at 3 ¶ 16. While still in Cuba, Plaintiff contacted the PICNIC's insurer, who instructed Plaintiff: "When you arrive back home just send us everything you have. What would also be good is for you to provide us with a detailed list of your expenses, with or without receipts, and we will see how we can figure out a solution for the taxi costs and other things were [sic] you do not have a receipt." DE 28-7 at 2.

Upon returning to the United States, Plaintiff forwarded his receipts to the PICNIC's insurer for the expenses he incurred while in Cuba. DE 28-9 at 3; DE 28-10 at 2. Plaintiff also inquired of Captain Gonzalez and the insurer as to how his expenses in the United States would be covered. DE 28-8 at 3; DE 28-9 at 3. Captain Gonzalez responded on May 25, 2017 by asserting that Plaintiff lied about a pre-existing condition and his medical certificate, insisted that Plaintiff return the $1,000 he was given in Cuba, and accused Plaintiff of defrauding the PICNIC's insurer. DE 28-8 at 2. The insurer

3

also responded on May 25, informing Plaintiff that his invoices were being sent to the claims department responsible for reimbursements. DE 28-9 at 2.

Plaintiff followed up with the insurer on June 6 and 16, 2017. DE 28-11; DE 28-13 at 3. He received a response on June 16 stating: (1) that the insurer needed a medical report from the Cuban hospital that treated Plaintiff saying that he was not allowed to travel after his surgery; and (2) that Plaintiff's "costs in the USA" would not be covered by the PICNIC's insurance. Id. at 2; see also DE 47-2 at 2 (Document from the PICNIC's insurer dated June 21, 2018 confirming that Plaintiff had "been informed that there does not exist coverage for the United States of America and any medical treatment performed over there.").

## B. Procedural Background

On November 9, 2017, Plaintiff filed a one-count complaint in admiralty alleging that Defendant Balerno International Ltd., the record owner of the PICNIC, failed to carry out its duty under general maritime law to provide prompt and adequate maintenance and cure and lost wages. DE 1. Plaintiff sought to recover the amounts due for maintenance and cure, as well as consequential damages, attorney's fees and costs, and punitive damages. Id. ¶ 3.

On November 17, 2017, in accord with 28 U.S.C. § 1608(b)(3)(B) and Federal Rule of Civil Procedure 4, the Clerk of Court filed a Notice of International Service certifying that a copy of Plaintiff's summons and complaint had been mailed to Defendant at its address in Tortola, British Virgin Islands. DE 6. On November 22, 2017, Defendant was served by DHL, return receipt requested, pursuant to Rule 4(f)(2)(C)(ii). DE 8.

After Defendant failed to respond to the complaint within 21 days, Plaintiff moved for, and the Clerk entered, Defendant's default. DE 10; DE 11. Plaintiff then filed a Motion for Default Judgment. DE 12. On April 18, 2018, the Court held an evidentiary hearing, at which Plaintiff presented evidence relating to his maintenance and cure claim and evidence supporting his punitive damage claim. DE 24; see DE 25 (evidence of maintenance rate); DE 28 (evidentiary hearing exhibits).

On April 26, 2018, the Court issued an Order Granting Plaintiff's Motion for Default Judgment. DE 26. The Court awarded Plaintiff a total recovery of $232,386.17, consisting of $100,772.13 in compensatory damages, punitive damages in an amount equal to Plaintiff's compensatory damages recovery, $28,651.10 in attorney's fees, and $2,190.81 in pre-judgment interest. Id. at 15; DE 27 at 1.

On June 8, 2018, the United States Marshals Service served a Writ of Execution on the PICNIC. DE 33. Defendant's counsel entered their appearances three days later. DE 32; DE 35. On June 26, 2018, Defendant moved to stay execution of the Court's default judgment pending the Court's disposition of the instant Motion to Set Aside Default Judgment, which was filed on June 27. See DE 41; DE 47. The Court granted Defendant's requested stay on July 11, 2018. DE 53.

## II. Legal Standard

It is well-established that "defaults are seen with disfavor because of the strong policy of determining cases on their merits." Florida Physician's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993) (per curiam). Federal Rule of Civil Procedure 55(c) instructs that a district court "may set aside a final default judgment under Rule 60(b)." Rule 60(b) contains six subsections setting forth various grounds upon which a party

5

can seek relief from a final judgment. Defendant invokes subsections (1), (3), and (6), which provide: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1), (b)(3), (b)(6).[2] Because the Court finds that Defendant has demonstrated excusable neglect under Rule 60(b)(1), Defendant's arguments under Rules 60(b)(3) and (b)(6) need not be addressed.

In ruling on a Rule 60(b)(1) motion, a district court must exercise its discretion "in light of the balance that is struck by Rule 60(b) between the desideratum of finality and the demands of justice." Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic, 788 F.3d 1329, 1343 (11th Cir. 2015) (internal quotation marks omitted). The determination of what constitutes excusable neglect is generally an equitable one that must take into account the totality of the circumstances surrounding the defaulting party's omission. Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 934 (11th Cir. 2007); see Pioneer Inv. Servs. Co. v. Bruswick Assocs. Ltd. P'ship, 507 U.S. 380, 389, 395 (1993); Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996).

---

[2] Rule 60(b)(4) permits a party to seek relief from a final judgment on the ground that "the judgment is void." A defaulting party may invoke Rule 60(b)(4) to set aside a judgment due to insufficient service of process. See In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1299 (11th Cir. 2003); Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1368-70 (11th Cir. 1982). The Court concluded in its Order Granting Plaintiff's Motion for Default Judgment that Defendant was properly served. See DE 26 at 3 n.1. Because Defendant does not now claim that service was improper, any challenge to the sufficiency of service of process has been waived. See In re Worldwide Web Sys., 328 F.3d at 1300 ("[C]hallenges under Rule 60(b)(4) on insufficient service of process grounds are waived if not squarely raised.").

6

A party seeking to set aside a judgment due to excusable neglect bears a heavy burden. Thus, Eleventh Circuit precedent "makes clear that the party seeking relief under Rule 60(b)(1) must provide a justification so compelling that the district court had to vacate the challenged order." Architectural Ingenieria, 788 F.3d at 1343. To do so, the defaulting party must show that it had a good reason for failing to respond to the complaint, a meritorious defense that might have affected the outcome of the case, and that setting aside the judgment would not result in prejudice to the non-defaulting party. In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).

### III. Discussion

### A. Good Reason

As its good reason for failing to respond to Plaintiff's complaint, Defendant contends that, as a result of the devastation wrought by back-to-back hurricanes in the British Virgin Islands ("BVI") in September 2017, its registered agent in the BVI neglected to forward the summons and complaint to Defendant's representatives in Gibraltar. In order to demonstrate to the Court that its neglect is excusable, Defendant must show that it "establish[ed] minimum procedural safeguards for determining that action in response to a summons and complaint is being taken." Gibbs v. Air Canada, 810 F.2d 1529, 1537 (11th Cir. 1987). Otherwise, Defendant "does not have a 'good reason' for failing to respond to [the] complaint." Sloss, 488 F.3d at 935; see, e.g., Ehlers, 8 F.3d at 784; Davis v. Safeway Stores, Inc., 532 F.2d 489, 490 (5th Cir. 1975) (per curiam); Baez v. S.S. Kresge Co., 518 F.2d 349, 350 (5th Cir. 1976) (per curiam).[3]

---

[3] All decisions handed down by the former Fifth Circuit prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Defendant describes its internal procedures in a sworn affidavit by Susan Gager, the head of corporate services at Line Group Limited ("LGL"), a Gibraltar-based company whose in-house licensed entities provide corporate shareholder and company secretary services for Defendant. DE 43-1 ¶¶ 2, 4. Ms. Gager attests that LGL had a "verbal agreement" with TMF (BVI) Limited ("TMF"), one of LGL's registered agents in the BVI, where "any mail received at [TMF's] office for which TMF act [sic] as Agents for LGL[ ] is forwarded to LGL by DHL at least on a monthly basis." Id. ¶ 7. "Anything deemed more urgent would not normally wait for a monthly courier and would be sent by TMF to LGL by DHL." Id. According to Ms. Gager, "[t]his arrangement has worked very well for many years and there has never been a need to implement more stringent procedures[,] as TMF have [sic] . . . never failed to send mail to LGL." Id. These procedures were not employed in the present case because, Ms. Gager says, "TMF's business operations and offices were significantly affected by the devastation caused by Hurricane Irma to the BVI in September 2017"—devastation that severely impacted the BVI's infrastructure and continued through November 2017, when Defendant was served with the summons and complaint. Id. ¶ 8

Jacinth Ward, the head of service line for international incorporations for TMF, provides further detail respecting the procedural safeguards TMF had in place. "Under ordinary circumstances," Ms. Ward explains, a package addressed to a client "would have been logged as received and scanned in and emailed to the client, followed by physical mailing of the [package] to [the] client, . . . thereby providing a three-step procedural safeguard to assure the notification and delivery of important correspondence." DE 43-3 ¶ 7. "As a consequence of the damage caused to the BVI

by Hurricane Irma," Ms. Ward continues, TMF's business operations were significantly disrupted, requiring "relocation of its offices and personnel . . . ." Id. ¶ 8. And in light of these events, TMF was unable to notify Defendant of the receipt of Plaintiff's summons and complaint and forward Defendant the documents. Id. Once TMF was notified of this oversight on June 12, 2018, it immediately located and forwarded the documents to Defendant. Id. ¶¶ 9-10.

Based on the affidavits of Ms. Gager and Ms. Ward, the Court finds that Defendant had minimum procedural safeguards in place to ensure a response to Plaintiff's summons and complaint, but that those safeguards fell through due to the devastation caused by the two hurricanes that hit the BVI in September 2017. Consequently, Defendant has established a good reason for its failure to respond to Plaintiff's complaint.

**B. Meritorious Defense**

The Court now turns to consider whether Defendant has set forth a meritorious defense that would have affected the outcome of this case. To establish a meritorious defense, Defendant "must make an affirmative showing of a defense that is likely to be successful." In re Worldwide Web Sys., 328 F.3d at 1296 (internal quotation marks omitted). In other words, Defendant must demonstrate that it has a "valid defense that would probably change the outcome of the case." Id. at 1297.

Defendant argues that Plaintiff should be precluded from recovering maintenance and cure because he knowingly or fraudulently concealed a pre-existing hernia condition. "Maintenance may be awarded by courts even where the seaman has suffered from an illness pre-existing his employment, but there is a general principle that

it will be denied where he knowingly or fraudulently conceals his illness from the shipowner." McCorpen v. Central Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968); see Meche v. Doucet, 777 F.3d 237, 244-46 (5th Cir. 2015); Jaunch v. Nautical Servs., Inc., 470 F.3d 207, 212-13 (5th Cir. 2006); cf. Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1284 (11th Cir. 2000) (upholding award of maintenance and cure for a fall that aggravated a pre-existing condition). To establish what has become known as a McCorpen defense, Defendant must show: (1) Plaintiff intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to Defendant's decision to hire him; and (3) a connection exists between the withheld information and the injury complained of in this lawsuit. Jackson v. NCL America, LLC, 730 F. App'x 786, 789 (11th Cir. 2018) (per curiam) (citing Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005)).

1. Intent. Maintenance and cure cases involving pre-exiting conditions generally fall into two categories—nondisclosure and concealment. As McCorpen explained:

> Where the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance. If the shipowner is unable to persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance, he will be liable for maintenance. He will be liable if it is found that there existed reasonable grounds for the seaman's good-faith belief that he was fit for duty. On the other hand, where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure.

396 F.2d at 548-49 (citations omitted).

There is no dispute that Defendant did not require Plaintiff to undergo a pre-employment medical examination or interview. This is therefore a case of nondisclosure. And in such cases, "the defendant must prove that the plaintiff

subjectively believed that her employer would deem her medical condition a matter of importance." Meche, 777 F.3d at 245.

Defendant asserts that, by coming aboard the PICNIC without a valid MCA Seafarer's Medical Certificate, Plaintiff knew that he would not be hired due to the fact that he did not possess and could not obtain such a valid certificate. This argument is supported by an affidavit from Jessie Helen Winn, who served as a stewardess and deckhand on the PICNIC when Plaintiff was injured. DE 43-4 ¶ 3. Ms. Winn also served with Plaintiff on the M/Y CARSON from December 2016 to January 2017. Id. ¶¶ 2, 4. According to Ms. Winn, while aboard the PICNIC, Plaintiff told her that he had two hernias and that he was dismissed from his employment on the CARSON due to his inability to obtain a valid medical certificate. Id. ¶ 6.

Captain Gonzalez likewise states that Plaintiff told him that he was not permitted to return to the CARSON until his hernia condition was resolved. DE 42-1 ¶ 14. Captain Gonzalez says as well that, although upon coming aboard the PICNIC Plaintiff said that his medical certificate was at home in Florida, Plaintiff later admitted that he lied about having a current medical certificate and could not obtain one due to his hernia. Id. ¶¶ 8, 14.

In response, Plaintiff asserts that he had no reason to believe that his hernia would impact his work aboard the PICNIC. DE 54-2 at 2 ¶ 9. On January 23, 2017, just two months before coming aboard the PICNIC, Plaintiff underwent an annual physical and received a clean bill of health. Id. at 1, 2 ¶¶ 3, 10; see DE 54-3 (record from physical). And notwithstanding the fact that he had already been diagnosed with a hernia in 2010, he nonetheless received a medical certificate that year. DE 54-2 at 2 ¶

11. Moreover, the restrictions contained in that certificate due to his hernia, Plaintiff claims, did not apply to his 2017 service on the PICNIC. Id. at 2 ¶ 12; see id. at 8-9 (2010 MCA Seafarer's Medical Certificate).

Plaintiff further notes that, in the seven years since he was diagnosed with a hernia, he worked continuously as a chef without any complications, and that he had never been denied a medical certificate because of his hernia condition, or for any other reason. DE 54-2 at 2 ¶¶ 13, 15. Plaintiff also points to the fact that he previously worked aboard the PICNIC in August 2015, even though his 2010 medical certificate expired in 2012. See DE 28-3 at 2; DE 54-2 at 8.

With respect to Plaintiff's apparent dismissal from the CARSON, he asserts that his employment ended for reasons unrelated to any medical condition or his lack of a valid medical certificate, a fact that Plaintiff claims is corroborated by a glowing letter of recommendation he received from the CARSON's captain, Jim Rosenberg. Id. at 3 ¶ 14; see id. at 10 (letter of recommendation). That letter is dated September 23, 2017, several months after the time Plaintiff was allegedly dismissed from the CARSON. Id.

The Court concludes that the evidence put forth by Defendant—especially the statements of Captain Gonzalez and Ms. Winn—call into question whether Plaintiff indeed had subjective, good faith belief that Defendant would deem his medical condition a matter of importance.

2. Materiality. Defendant has also established that Plaintiff's nondisclosure of his medical condition was material to its decision to hire him. Plaintiff was required to have a current MCA Seafarer's Medical Certificate as a condition of employment, a certificate that Plaintiff left at home. DE 42-1 ¶ 7. As noted, the parties dispute whether Plaintiff

12

told Captain Gonzalez upon coming aboard that the certificate was expired—Plaintiff says that he did, while Captain Gonzalez says that Plaintiff did not. Id. ¶ 8; DE 54-2 at 2 ¶ 7. In any event, after falling ill, Plaintiff told Captain Gonzalez that "he could not obtain [a valid medical certificate] due to his hernias." DE 42-1 ¶ 14. Given Defendant's requirement that its crewmembers must possess a valid medical certificate, and given Defendant's evidence suggesting that Plaintiff was unable to obtain a valid medical certificate due to his hernia, it is appropriate to conclude that Defendant could demonstrate on the merits that Plaintiff's nondisclosure of that condition was material to its decision to hire him.

3. Connection. There is a clear connection between Plaintiff's hernia condition and the injury at issue in this case. Plaintiff makes no assertion that the hernia injury he sustained in Cuba does not stem from the exact same hernia condition that he did not disclose to Defendant.

In sum, Defendant has made an affirmative showing that it is likely to succeed on its McCorpen defense. That defense, if proven, would probably change the outcome of this case.[4]

## C. Prejudice

Finally, Plaintiff says that he would be prejudiced because Defendant's continued refusal to pay maintenance and cure will further delay his obtaining necessary hernia treatments, resulting in prolonged pain and suffering. But "the mere possibility of prejudice from delay, which is inherent in every case, is insufficient to require denial of a 60(b)(1) motion." Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776

---

[4] In light of the Court's disposition on Defendant's McCorpen defense, the Court need not address, and expresses no opinion on, the additional defenses raised by Defendant in its Motion.

F.2d 1277, 1280 (5th Cir. 1985). Especially given the strong judicial policy of deciding cases on the merits, the Court finds that Plaintiff would not be prejudiced if the Final Default Judgment were set aside.

### IV. Conclusion

Defendant has met its burden of showing that it has a good reason for failing for respond Plaintiff's complaint, a meritorious defense to Plaintiff's maintenance and cure claim, and that Plaintiff would not be prejudiced were the Court's Final Default Judgment set aside. Defendant has therefore established that the Final Default Judgment should be set aside for excusable neglect under Rule 60(b)(1). Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Set Aside Default Judgment [DE 47] is **GRANTED**.
2. The Clerk of Court shall **SET ASIDE** the Court's Final Default Judgment [DE 27] dated April 26, 2018.
3. The Clerk of Court is directed to **REOPEN** this case.
4. Defendant shall respond to Plaintiff's complaint [DE 1] on or before **September 7, 2018**.
5. This case is **RESET** for trial before the Honorable James I. Cohn, United States District Judge, at the United States District Court at 299 East Broward Boulevard, Courtroom 203E, Fort Lauderdale, Florida, during the **two-week trial period** commencing **Monday, May 20, 2019**, at 9:00 a.m., or as soon thereafter as the case may be called.
6. Calendar Call will be held on **May 16, 2019**, at 9:00 a.m.

7. Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of this Court, this case is **REFERRED** to United States Magistrate Judge Barry S. Seltzer for appropriate disposition of all pro hac vice motions, all pretrial discovery motions, and all motions that relate directly to these motions, such as motions for extension of time, motions for reconsideration, motions for sanctions, and motions for mental or physical examinations. This Order does not refer any motion which requests a continuance or extension of the trial or pretrial scheduling dates.

8. Pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Rules of the Local Rules of this Court, this case is **REFERRED** to United States Magistrate Judge Barry S. Seltzer to conduct a Scheduling Conference pursuant to Local Rule 16.1(b) for the purpose of setting pre-trial deadline dates, and for determining possible consent to the jurisdiction of the Magistrate Judge for trial. All counsel of record are required to attend the Scheduling Conference that will be noticed by Magistrate Judge Seltzer.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 23rd day of August, 2018.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF